UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| Plaintiff, | : | |
| | : | No. 3:20-cr-00057 (VLB) |
| v. | : | |
| | : | |
| **CHAZ DEAR,** | : | December 3, 2020 |
| Defendant. | : | |
| | : | |

**MEMORANDUM OF DECISION DENYING
<u>DEFENDANT'S MOTION TO SUPPRESS, [ECF NO. 27]</u>**

Chaz Dear has been charged with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). [ECF No. 1 at 1]. Before the Court is a motion to suppress a firearm found during a police search of Mr. Dear's residence on January 30, 2020, and the statements made by Mr. Dear to the authorities. *See* [ECF No. 27 (Mot. to Suppress)]. Mr. Dear argues that the search was unconstitutional because the police did not have probable cause to search his residence, and the search warrant authorizing the search was, therefore, lacking a proper basis, and statements he made to police are inadmissible as "fruit of the poisonous tree." *Id.* The Court DENIES Defendant's motion to suppress for the reasons explained below.

I.  <u>Factual Background</u>

The Court recounts the following facts derived from the exhibits attached to the Government's Opposition to Defendant's Motion—a Parole Violation Report prepared by Defendant's Parole Officer, Jack Wallace, and the Search Warrant authorizing the search of Defendant's residence and the affidavit supporting it, as well as the affidavit submitted by Defendant's mother, Taniesha Sneed, appended to Defendant's supplemental motion

1

to suppress.  See [ECF Nos. 37-1, 37-2 (Opposition to Mot. to Suppress Exhibits.), 35-1 (Sneed Aff.)].[1]

On July 7, 2016, Defendant was convicted in state court of the following crimes:

- Felony drug distribution in violation of Conn. Gen. Stat. § 21a-278(b).  *State v. Chaz Dear*, No. F02B-CR16-0289883-S,

- Felony drug distribution in violation of Conn. Gen. Stat. § 21a-278(b).  *State v. Chaz Dear*, No. F02B-CR16-0290982-S,

- Felony illegal possession of a firearm in a vehicle in violation of Conn. Gen. Stat. § 29-38, *State v. Chaz Dear*, No. F02B-CR16-0289974-S,

- Felony larceny in the second degree in violation of Conn Gen. Stat. § 53a-123, *State v. Chaz Dear*, No. F02B-CR16-0290285-S, and

- Misdemeanor assault in the third degree in violation of Conn. Gen. Stat. § 53a-61, *State v. Chaz Dear*, No. F02B-CR15-0286224-S.[2]

Defendant was sentenced to 10 years' imprisonment for the above crimes, execution suspended after five years, and five years' probation.  *Id.*

Defendant served just over three years in state prison and was released on August 12, 2019 to serve the remainder of his sentence on parole, with an end of supervision on July 6, 2021.  [ECF No. 37-1 at 1].  From the time of his release until his arrest on January 30, 2020, Defendant resided with his mother and her two daughters at 277 Hough Avenue, Bridgeport, Connecticut.  [ECF No. 35-1 ¶¶ 6, 7].

In September 2019, Defendant's Parole Officer Wallace and a Bridgeport police officer visited 277 Hough Avenue to "charge [C]haz [Dear]'s bracelet."  *Id.* ¶ 9.  On October

---

[1] The Court also "take[s] judicial notice of relevant matters of public record," such as information regarding Defendant's prior convictions, which are available on the State of Connecticut judicial website.  *Giraldo v. Kessler,* 694 F.3d 161, 164 (2d Cir. 2012).
[2] *See* https://www.jud2.ct.gov/crdockets/CaseDetailDisp.aspx?source=Pending&Key=0f4a1867-3963-4448-af6f-01eff352e449.

15, 2019, Parole Officer Wallace and Officer Blackwell of the Bridgeport Police Department searched Defendant's residence.  *Id.* ¶¶ 10-15.  They found a shoebox containing Ziploc baggies in the kitchen of the residence and told Defendant's mother that these were drug paraphernalia.  *Id.* ¶ 12.  They also searched Defendant's cell phone and found "plenty of evidence on gun trafficking and drug trafficking." [ECF No. 37-1 at 4].  "This led to the phone being turned over to the ATF [Bureau of Alcohol, Tobacco and Firearms] with a warrant to have them 'dump' it.  They discovered more evidence of the previous criminal activities along with credit card crimes with regards to stolen identities.  The ATF along with this [Parole Officer] were watching Dear for more crimes while the ATF worked the case to see if a federal indictment was possible.  In the meantime, the CSP [Connecticut State Police] was made aware of drug trafficking and started their own investigation which led to [Defendant's] arrest."  *Id.* at 4-5.

In late November 2019, Detective David Edwards, a 22-year veteran of the Connecticut State Police assigned to the Statewide Urban Violence Cooperative Crime Control Task Force ("Statewide Task Force"), met with a confidential informant ("CI"), who stated that "a black male, who goes by the name of 'Chaz,' [was] selling marijuana in the city of Bridgeport.  The confidential informant further described 'Chaz' as being shorter than average, with average build, long dreds, no facial hair, [and] approximately in his early twenties."[3]  [ECF No. 37-2 ("Warrant Aff.") ¶¶ 1, 3].  When Detective Edwards presented this information to Bridgeport Police Officer Goncalves, a fellow Statewide Task Force member, Officer Goncalves stated that the description was consistent with

---

[3] Detective Edwards and Bridgeport Police Officer Goncalves, also assigned to the Statewide Task Force, swore out the affidavit that resulted in the search warrant in the instant matter.  [ECF No. 37-2 ¶¶ 1, 2].

3

that of Chaz Dear, who was a "known Greenes Boyz gang member/drug trafficker."  *Id.* ¶ 5.

The CI set up a marijuana purchase with "Chaz" at an agreed upon location in Bridgeport.  *Id.* ¶ 6.  Eight members of the Statewide Task Force conducted surveillance of the agreed-upon meeting location, and of Defendant's residence.  *Id.* ¶ 8.  Task Force Officers Amato and Simmons, who were surveilling Defendant's residence, "observed an individual wearing a hoodie walk from the area of the rear of [Defendant's residence] and travel to the aforementioned agreed upon meeting location, under constant surveillance by surveillance team members."  *Id.*  Officer Amato, who knew Defendant from prior interactions, despite not getting a clear look at the individual's face, noted that the hooded individual's "build" was consistent with that of Defendant.  *Id.*  Upon arrival at the agreed-upon location, the individual met with the CI.  Afterwards, the CI met with Detective Edwards and gave him what he purchased from the person he previously identified as "Chaz" and who Officer Goncalves previously identified as Chaz Dear.  *Id.* ¶ 9.  The substance tested positive for marijuana.  *Id.* ¶ 12.  Later, Detective Edwards showed the CI a picture of Defendant from his parole violation report, and the CI "immediately responded, 'that's Chaz.'"  *Id.* ¶ 20.

On December 26, 2019, police attempted to stop a vehicle in which Defendant was a passenger, but the female driver "did not stop."  [ECF No. 37-1 at 5].  As she continued to drive slowly officers followed and "saw movement in the car as though she was attempting to hide things*.*"  *Id.*  She eventually stopped and the investigating officers found drugs on the driver's person.  *Id.*  Defendant denied owning the drugs, and the

4

driver was charged with her first drug possession offense.  *Id.*  Defendant failed to report this interaction with police to his parole officer, as required.  *Id.*

On January 20, 2020, Defendant "was seen driving a rented vehicle extremely reckless[ly]."  *Id.*  Defendant was arrested and charged with use of a motor vehicle without permission in violation of Conn. Gen. Stat. § 53a-119b(a), illegal operation of a motor vehicle under a suspended license in violation of Conn. Gen. Stat. § 14-215, and reckless driving under Conn. Gen. Stat. § 14-222.  *State v. Chaz Dear*, Nos. F02B-CR20-0334488-S, F02B-MV20-0703066-S.[4]  "The [arresting] officers suggest[ed to Defendant's Parole Officer that] he was driving recklessly to avoid being caught with narcotics and threw them from the car when they lost sight of him.  [Defendant] admitted to seeing the officer be[hind] him when he drove away.  He failed to advise his PO of this police contact," as required.  [ECF No. 37-1 at 5].

The CI set up a second marijuana purchase from "Chaz" one week prior to the application for the search warrant, on approximately January 22, 2020.  *Id.* ¶ 13.  This time, four members of the Statewide Task Force surveilled the drug buy, and Task Force Officer Borrico, who knew Defendant from prior interactions was able to "positively identif[y] Chaz Dear [as the individual who] . . . exit[ed] the rear door of [his] residence of 277 Hough Avenue."  *Id.*  "Surveillance team members [then] maintained constant surveillance of Dear as he traveled from his residence to the aforementioned agreed upon meeting location.  After arriving at the agreed upon meeting location Dear met with the confidential informant."  *Id.*

---

[4] *See* https://www.jud2.ct.gov/crdockets/CaseDetail.aspx?source=Pending&Key=c4492db2-df4d-4327-ad58-cbdb02751689.

Afterwards, the CI again met with Detective Edwards, again handing him marijuana that he purchased from "Chaz," and when Detective Edwards showed the CI Defendant's photo the CI "immediately responded, 'that's Chaz.'"  *Id.* ¶ 20.

Paragraph 23 of the search warrant affidavit stated that:

> based on training and experience, the affiants know that individuals who traffic illegal drugs will store the drugs in their homes, in their vehicles, and on their persons.  The affiants also know that individuals who traffic illegal drugs will store the cash proceeds from their illegal drug sales in their homes, their vehicles, in many cases using hidden compartments, and on their persons.

*Id.* ¶ 23.

The final paragraph of the affidavit sworn to before State of Connecticut Superior Court Judge Alex Hernandez summarized as follows:

> based on the aforementioned facts and circumstances, the affiants have probable cause to believe that evidence of Possession of Marijuana with Intent to Sell, 21a-277(b(2A*), is within the [Defendant's] residence located at 277 Hough Avenue, Bridgeport, Connecticut, described above, and that the affiants are requesting permission to search this residence and seize said items.

*Id.* ¶ 24.  Detective Edwards and Officer Goncalves then signed the affidavit and swore to its accuracy before Judge Hernandez, who then also signed it, authorizing the Statewide Task Force to arrest Defendant and search 277 Hough Avenue for marijuana and other drugs, firearms, and drug paraphernalia.  [ECF No. 37-2 at 9 (Search Warrant signed January 29, 2020].

In executing the warrant, Task Force members tracked Defendant as he left his residence and took him and his girlfriend into custody.  [ECF No. 37-1 at 4].  On the way back to Defendant's residence, Defendant informed one of the Task Force members that there was a firearm on his living room couch.  *Id.*  Upon entry to the house, Task Force

6

members found the firearm as well as a shoebox containing heroin and crack cocaine "just a few feet from the firearm." *Id.* Defendant's Parole Officer, who was present, asked Defendant for the password to Defendant's phone, which had fallen out of his pocket, but he refused. Defendant also stated that "you got nothing on me," but when questioned about the firearm stated, "it's mine." *Id.*

After completing the search of Defendant's residence, the Authorities seized:

- **One Glock 27 .40 caliber handgun loaded with an extended magazine holding 23 rounds of ammunition,**
- **$167 in cash,**
- **Four wax folds containing 1.1 grams of heroin, and**
- **One plastic bag containing 1.6 grams of crack cocaine.**

[ECF No. 37-2 at 10].

Defendant currently has state charges pending, based on the January 30, 2020 arrest, for:

- **Felony criminal possession of a firearm in violation of Conn. Gen. Stat. § 53a-217,**
- **Felony possession of a large capacity magazine in violation of Conn. Gen. Stat. § 53-202w(c2),**
- **Felony illegal transfer or purchase of a handgun in violation of Conn. Gen. Stat. § 29-33,**
- **Felony risk of injury to a minor in violation of Conn. Gen. Stat. § 53-21,[5]**
- **Misdemeanor possession of drugs near a school or daycare in violation of Conn. Gen. Stat. § 21a-279(b), and**
- **Misdemeanor possession of a controlled substance or greater than ½ ounce marijuana in violation of Conn. Gen. Stat. § 21a-279(a)(1).[6]**

---

[5] Defendant's parole office notes that this charge is based on there being "young children" present with the loaded firearm. [ECF No. 37-1 at 5].
[6] *See* https://www.jud2.ct.gov/crdockets/CaseDetail.aspx?

7

*State v. Chaz Dear*, No. F02B-CR20-0334615-S.

## II. Legal Standard

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," U.S. Const. amend. IV, and mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id.*

Probable cause is "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . , including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (internal quotation marks omitted). "[P]robable cause is a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232. "In assessing the proof of probable cause, the government's affidavit in support of the search warrant must be read as a whole, and construed realistically." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998). "Courts do not isolate each factor of suspicion but instead look to the totality of the circumstances." *United States v. Gagnon*, 337 F.3d 230, 236 (2d Cir. 2004) (citing *Gates*, 462 U.S. at 230-31).

A court reviewing the issuance of a search warrant "accord[s] 'great deference' to a judge's determination that probable cause exists[] and . . . resolve[s] any doubt about

---

source=Pending&Key=5b49e779-9e21-46d1-a378-27d119a55a85.

8

the existence of probable cause in favor of upholding the warrant." *Salameh*, 152 F.3d at 113.  The court's "duty is 'simply to ensure that the magistrate had a substantial basis for . . . conclud[ing]' probable cause existed."  *Id.* at 113 (quoting *Gates*, 462 U.S. at 238-39). "[T]he resolution of doubtful cases . . . should be largely determined by the preference to be accorded to warrants."  *United States v. Martin*, 157 F.3d 46, 52 (2d Cir. 1998) (internal quotation marks omitted); *see also United States v. Ventresca*, 380 U.S. 102, 109 (1965) (in doubtful cases, probable cause is more easily sustainable where a judicial officer authorized warrant).  "A reviewing court should not interpret supporting affidavits in a hypertechnical, rather than a commonsense manner."  *Id.* (internal quotation marks omitted).

Probable cause requires more than generalized suspicion, *United States v. Ceballos*, 654 F.2d 177, 185 (2d Cir. 1981), but "does not require a *prima facie* showing" of criminality.  *United States v. Martin*, 426 F.3d 68, 76 (2d Cir. 2005).  Nor does probable cause mean more likely than not; rather, it only requires a "probability or substantial chance of criminal activity."  *United States v. Bakhtiari*, 913 F.2d 1053, 1062 (2d Cir. 1990); *see also United States v. Juwa*, 508 F.3d 694, 710 (2d Cir. 2007).  "The fact that an innocent explanation may be consistent with the facts as alleged, however, does not negate probable cause."  *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985).

In instances where evidence is "seized pursuant to a warrant for which actual probable cause does not exist or which is technically deficient," the evidence nevertheless "is admissible if the executing officers relied on the warrant in 'objective good faith.'"  *United States v. Canceimo*, 64 F.3d 804, 807 (2d Cir. 1995) (quoting *United States v. Leon*, 468 U.S. 897 (1984)).  This exception to the exclusionary rule recognizes

that "the exclusionary rule 'cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity.'" *Id.* (quoting *Leon*, 468 U.S. at 919); *see also Herring v. United States*, 555 U.S. 135, 144 (2009) (application of the exclusionary rule limited to "deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence").

### III. Discussion

#### A. Defendant's Motion to Suppress

Mr. Dear moves to suppress the firearm found in his residence and his statements regarding that firearm on the grounds that the Statewide Task Force did not have probable cause to search his residence and that the search warrant authorizing the search was, therefore, deficient. [ECF No. 27-1 (Mem. in support of Mot. to Suppress)].

Specifically, Defendant argues that the affidavit supporting the search warrant provides no connection between the two drug sales described in the affidavit and Defendant's residence, or even any connection between the two drug sales and Defendant himself:

> A careful reading of the warrant and affidavit here clearly reveals that there is <u>no information that there is or was contraband in the defendant's home</u>. Neither the officers, nor the CI, assert that they saw, heard, learned or were otherwise told that the defendant kept contraband or firearms in the home – the searched premises. Indeed, the affidavit and the warrant are completely silent as to this point. There is absolutely no information supporting this search. . . . It is averred that the CI engaged in a transaction with the defendant after the defendant left his residence. However, the officers have offered no information that the defendant took drugs from this home or was carrying the drugs from this residence. The affidavit includes no other information. In light of the endless number of possibilities of the source and location of the alleged narcotics, this application is deficient. . . . There is no way to link the alleged transaction with the CI, to the defendant's residence – the site of the search warrant and the location where the gun that forms the basis for this case, was found. There is no way a reasonable inference can be drawn on the facts included in the application and affidavit, that the

> defendant stored narcotics in his home. And the CI provides no further corroboration and does not claim that he ever saw drugs in the 277 Hough Street residence. There is no allegation, information, assertion or evidence of this in the entire application, other than the general "training and experience" paragraph and the general statement that drug traffickers are known to keep drugs in their home.
> The government has no probable cause for this search, and thus the firearm must be suppressed.

[ECF No. 27-1 at 10, 12-13 (emphasis in original)].

Defendant also relies on *United States v. Rios*, 881 F. Supp. 772 (D. Conn. 1995), which held that reliance on an affiant's "training and experience," without any supporting factual information, is insufficient to establish probable cause supporting a search warrant and subsequent search, and argues that because this case law is "now settled," the Task Force members executing the deficient search warrant should not have done so and thus the good faith exception to the warrant requirement is inapplicable. *Id.* at 10, 13.

Finally, Defendant argues that because the search warrant lacked probable cause, the resulting search was unlawful, and Defendant's statements made "after the firearm was seized by law enforcement," should be suppressed "as tainted evidence flowing from the illegal search." *Id.* at 14 (citing *U.S. v. Santos*, 303 F. Supp. 2d 333 (S.D.N.Y. 2003), which Defendant describes as "a case on on [sic] all fours with this situation," in which "statements that defendant made following the unlawful seizure of weapons from his apartment and his unlawful arrest were excludable as fruits of the poisonous tree.").

In the Court's view, there was probable cause for a reasonable person to conclude that Defendant kept marijuana or other contraband in his residence. On two occasions Defendant was observed leaving the vicinity of his residence and travelling under constant surveillance to a drug sale meeting with Detective Edwards' confidential

11

informant. On the first occasion law enforcement observed him leave the curtilage of his residence and go directly to the location of the drug sale. On the second occasion law enforcement officers saw him leave the interior of his residence and go directly to the location of the drug sale. During the first occasion, surveillance officers in the vicinity of Defendant's residence were unable to positively identify Defendant but were able to observe his stature and attire. During his debriefing, the CI identification the individual who sold him the confirmed marijuana as "Chaz," i.e., Chaz Dear. [ECF No. 37-2 ¶ 20 ("Affiant Edwards subsequently presented to the confidential informant the just referenced DOC photo of Chaz Dear, . . . and asked the confidential informant if he/she was familiar with the individual depicted in said photo. The confidential informant immediately responded, 'that's Chaz.'")]. And, in the second drug sale to the confidential informant, not only did the confidential informant confirm Defendant's identity to Detective Edwards, *id.*, but Task Force Officer Borrico, "who had previously set up surveillance with a view of the rear of Chaz Dear's residence located at 277 Hough Avenue, Bridgeport, <u>positively identified Chaz Dear . . . exit the rear door of the residence</u> of 277 Hough Avenue. Note that TFO Borrico is familiar with Dear, having had prior police related dealings with same. Surveillance team members maintained constant surveillance of Dear as he traveled from his residence to the aforementioned agreed upon meeting location." *Id.* ¶ 15 (emphasis added). During the second controlled buy, Defendant was positively identified exiting the interior of his residence, and was continuously surveilled until he met with and handed marijuana to the CI, who also positively identified and thus confirmed Defendant's identity. At no time was he observed acquiring the marijuana he later sold to the CI. Consequently, the marijuana was on his

person when he left his residence and therefore it is utterly reasonable to infer the marijuana was inside his residence.

It is true that Detective Edwards and Officer Goncalves noted in the search warrant affidavit that based on their "training and experience" those trafficking in narcotics tend to store drugs and drug proceeds in their residences, but that training and experience was amply augmented by the facts of this case establishing that Defendant travelled from the curtilage of his home (transaction number one) or from the interior of his home (transaction number two) under constant surveillance to a meeting and engaged in a controlled sale to the CI without stopping to acquire the drugs he sold.

In sum, and considering the deference accorded to judicial officers who make probable cause search warrant authorization determinations in the first instance, *see Ventresca*, 380 U.S. at 109 (in doubtful cases, probable cause is more easily sustainable where a judicial officer authorized warrant), the Court finds that there was probable cause for a reasonable person to conclude that Defendant could have been storing drugs or other contraband at his residence.

Moreover, even if there was a question as to whether Judge Hernandez acted appropriately in granting the application for a search warrant in this case, the fact is that he did so, and the Task Force members who executed the search warrant did so, as far as the record indicates, with objective good faith.  Defendant takes no exception with this except to argue that because there were no facts supporting the search warrant that Judge Hernandez signed authorizing the search of Defendant's residence, and the warrant was based solely on the one paragraph stating that based on the affiants' training and experience, it was likely Defendant kept drugs in his house, the Task Force members

should have known the caselaw holding that such support is inadequate and refused to execute the search warrant. The Court disagrees.

As discussed, there were facts in the affidavit that supported a judicial determination of probable cause, but even if those facts were borderline, it remains true that the Task Force took those facts to a judicial officer, got a determination that the facts were good enough, then executed the search warrant without error and in good faith. Under these circumstances, even if Judge Hernandez was mistaken as to the existence of probable cause, the Task Force reasonably relied on his judgment in good faith in executing the search warrant, which means that the good faith exception to the search warrant requirement excuses any infirmities in the affidavit underpinning the search warrant. *Leon*, 468 U.S. 897.

Finally, because the search of Defendant's residence was legal, his statements are not inadmissible as "fruits of the poisonous tree."

### B. Evidentiary Hearing

"[A]n evidentiary hearing on a motion to suppress ordinarily is required if 'the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question.'" *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992) (quoting *United States v. Licavoli*, 604 F.2d 613, 621 (9th Cir. 1979)). "[A] defendant seeking to suppress evidence bears the burden of demonstrating disputed issues of fact that would justify an evidentiary hearing." *United States v. Diaz,* 303 F. Supp. 2d 84, 93 (D. Conn. 2004) (citing *United States v. Culotta*, 413 F.2d 1343, 1345 (2d Cir. 1969)). Further, a defendant seeking a hearing must submit "an affidavit of someone alleging personal knowledge of the

relevant facts." *United States v. Barrios*, 210 F.3d 355, 2000 WL 419940, at *1 (2d Cir. Apr. 18, 2000) (citing *United States v. Gillette*, 383 F.2d 843, 848 (2d Cir. 1967)).

Here, there are no "contested issues of fact going to the validity of the search" that might justify an evidentiary hearing. *Pena*, 961 F.2d at 339; *Diaz*, 303 F. Supp. 2d at 93. Defendant has submitted an affidavit signed by his mother testifying to the facts of his stay at her house and two visits by Defendant's parole officer, but none of those facts are contested by the Government or alter in any way the Court's conclusions as to the validity of the search warrant that Judge Hernandez signed and issued.

Thus, no hearing on Mr. Dear's motion to suppress is necessary.

IV. **Conclusion**

For the foregoing reasons, the Court DENIES Defendant's Motion to Suppress.

IT IS SO ORDERED.

                               /s/
                               Hon. Vanessa L. Bryant
                               United States District Judge

Dated at Hartford, Connecticut: this 3rd day of December 2020.